### STATE OF SOUTH CAROLINA v. LAKE.

1. In action against a clerk of court and his sureties to recover moneys received by this clerk officially during his term of office, the records of the causes in which the money was received and the record in a cause between his successor in office and such clerk to recover these moneys, are admissible in evidence to show the amounts received.

2. In action brought upon the official bond of a clerk of court 13 years after he went out of office, alleging as breaches, (1) the failure of the clerk to report to court the moneys in his hands; (2) his failure to deposit in bank; (3) his failure to pay over to his successor; (4) his failure to pay over to the parties entitled: *held*, that the action on the bond was barred by the statute of limitations, both as to the clerk and as to his sureties, more than six years having elapsed since the alleged breaches of the covenants of the bond occurred. MR. JUSTICE McGOWAN dissented as to the liability of the principal obligor for the fourth breach alleged, he never having thrown off his trust by a denial of indebtedness.

3. Whether the clerk, the principal obligor, could shield himself from liability for moneys officially received by him until after six years from disavowal, if sued without regard to his official bond, not decided; but in action on the bond, recovery can be had only by showing breaches of its covenants, and that such breaches occurred within six years.

4. A failure by the clerk to pay out moneys to the parties in interest, constitutes a breach of the bond only where there were both an order to pay out and a demand under that order during the clerk's term of office.

Before KERSHAW, J., Newberry, July, 1886.

The case is thus fully stated by Mr. Justice McGowan in his dissenting opinion :

This appeal was heard at the November term of this court, 1887, when a re-argument was ordered upon the following questions, to wit: "Whether the statute of limitations applies as a matter of defence by the defendants, principal and sureties, and especially whether it can be set up in action on bond, like that in this case. 2nd. And if so, whether the conditions warranting its interposition are present, either in behalf of the principal or the sureties, or both." This re-argument was had at the April term, 1888.

It appears that the defendant, Lake, was elected clerk of the Court of Common Pleas for Newberry County in 1868, with defendant Wicker, D. Hughey, Henry Koon, and others as sureties. He went into office in July, 1868, and out of office November 21, 1872, being succeeded by one Jesse C. Smith. The action below was brought in October, 1885, nearly thirteen years after Lake went out of office. The complaint alleged various breaches of the bond : 1st. That said Lake, as clerk, received large sums of money belonging to different parties in the case of Hill *v.* Watson and Thompson *v.* Thompson, which money, then in his hands officially, he did not, as required by law, from time to time report to the court. 2nd. That said money was not deposited in bank as required by law. 3rd. That he failed to pay it to his successor in office according to law. 4th. That said Lake failed, and still refuses, to pay over the money in question to the parties respectively entitled thereto.

Both defendants answered. Lake denied the material allegations as to the breaches, and made defence : 1st. That the attorneys for the parties in interest prevented him, by their advice, from paying over the money in question to his successor, Smith. 2nd. That the causes of action did not accrue within six years

before commencement of the action.     3rd. That the causes of action did not accrue within ten years before suit brought.     4th. That there is another action pending on the same subject-matter. Wicker, the surviving surety, for himself and the other sureties, made the same defence as Lake, and in addition thereto the following: That the plaintiff, on October 27, 1868, accepted a bond from Lake as clerk, with one Crooks as surety, and thereby caused the release of the sureties on the first bond.

The cause came on for trial before Judge Kershaw and a jury. The execution of the bond was proved, and the receipt of the money by Lake during his term of office as clerk, but there was no evidence that it had been regularly reported to the court, or deposited in bank, or turned over to his successor, Smith.   On the contrary, as to turning it over to his successor, it appeared from a record of proceedings—Smith *v.* Lake—that his successor demanded the money, but that Lake refused to turn it over to him, and the court did not order him so to do.   It appeared that in both the cases of Hill *v.* Watson and Thompson *v.* Thompson, there were orders of court directing the money to be paid out to the parties—that in the first case named made during Lake's term of office, requiring the money to be paid to the parties in interest, and that in the second case made after the expiration of Lake's term, and requiring the money paid to Silas Johnstone, Esq., master.   It also appeared that B. J. Ramage, one of the parties entitled to the money, a few days before the action was brought, demanded payment of it from Lake, who refused to pay it, for the reason assigned, that "he could not do it just then."

The defendants offered no evidence.   Both parties made numerous requests to charge, which, as far as necessary, will be noticed hereafter.   Under a very full and clear charge, the jury found for the sureties; but against Lake, the principal obligor, they found for the plaintiff the penalty of the bond.   Both sides appeal—Lake, because he was held liable, and the plaintiff, because the sureties were not also included in the verdict against the principal.

LAKE'S GROUNDS OF APPEAL.—"I. Because his honor erred in admitting as evidence the orders for the payment of money to the parties in the cases named, passed in said cases after the

expiration of Lake's term of office as clerk, and to which said actions Lake was not a party.

"II. Because his honor refused to charge, as requested by the defendant, as follows : *First.* That the duty of Lake to deposit the funds in his hands as clerk terminated when he went out of office on November 21, 1872. *Second.* That if the jury find that the parties who obtained those orders allowed six years to elapse before this action was brought, they are barred through the present plaintiff. *Third.* That the said orders were demands by the parties, and the statute of limitations began to run in favor of Lake and his sureties from the respective dates of said orders. *Fourth.* That the statute of limitations began to run at the time he retired from office as to the funds held as clerk. *Fifth.* That Lake, as clerk, did not hold his office as trustee. *Sixth.* That if he did hold as trustee, said trust could be terminated by law; and the trust, if any there was, terminated at the expiration of his term of office. *Eighth.* That the trust, if any there was, terminated when Lake refused to turn over to his successor, or to pay over to the parties, as required by said orders. *Tenth.* That the bond of Lake was conditioned solely for the performance of his duties while he was in office, and anything he may have done, or failed to do, after he went out of office, is no breach of the bond.

"III. Because his honor erred in charging the jury that Lake, after the expiration of his term of office, and after he had gone out of office, still held the funds as trustee, and that the statute of limitations did not begin to run in his favor until personal demand made upon him by the parties entitled thereto.

"IV. Because his honor erred in charging the jury, that the said orders passed in cases above referred to were not demands upon Lake for the funds in his hands as clerk."

PLAINTIFF'S GROUNDS OF APPEAL.—"1. Because his honor refused to charge the jury that the statute of limitations cannot begin to run in this case until demand made by the parties entitled to said money, or until Lake did something which showed that he intended to put an end to the trust.

"2. Because his honor charged the jury that it was the duty of the defendant, Lake, to turn over to Smith, his successor, all

the funds in his hands as clerk of the court at the expiration of his term of office.

"3. Because his honor charged the jury that the statute of limitations began to run in favor of the sureties on the official bond from the expiration of his term of office.

"4. Because his honor charged the jury that the statute of limitations began to run in favor of Lake and his sureties from the expiration of his term of office, so as to protect them from suit on account of Lake's breach in failing to deposit the funds of the office in some bank, as required by law.

"5. Because his honor should have charged, as requested, 'That the duty to deposit said funds in bank is a continuing one, and the default continuous so long as the performance of such duty is neglected, and, therefore, the statute of limitations cannot bar this action under the evidence in this case, which not only shows that said money was not deposited according to law, but was not kept deposited in any way.'

"6. Because his honor should have charged, as requested, 'That even if Smith, as successor, was entitled to demand and receive from Lake the funds in his hands as clerk, such a demand and refusal to comply with it would not enable Lake or his sureties to plead the statute of limitations against the parties ultimately entitled to the fund.'

"7. Because his honor should have charged, as requested, 'That the statute of limitations cannot begin to run against Lake's official bond as clerk, he being a receiving officer, or trustee, until 20 years after its date, unless he has done something which shows his intention to put an end to the trust imposed on him.'

8. [Not applicable.]

"9. Because his honor erred in charging the jury that the statute of limitations barred the breaches, both as to Lake and his sureties, to wit, not making regular reports to each term of the court, and not paying over to his successor within six years from the expiration of his term of office."

*Messrs. Jones & Jones* and *Suber & Caldwell*, for plaintiffs.

*Messrs. Moorman & Simkins*, for T. M. Lake.

*Mr. Y. J. Pope*, for the sureties.

December 7, 1888. The opinion of the court was delivered by
MR. CHIEF JUSTICE SIMPSON. Adopting the statement of
this case found in the opinion prepared by Mr. Justice McGowan,
and concurring in that opinion down to the matter of the statute
of limitations, but differing somewhat upon that question from
said opinion, I beg leave to present the following as my views
thereon.

The vital question in this case is the statute of limitations.
His honor held that as to all of the alleged breaches of the bond,
except the failure to pay to the parties the amounts collected for
them, the statute was a bar, but as to this last alleged breach,
while Lake, the clerk, could not be protected, the sureties were.
Hence the verdict was against Lake for the penalty of the bond,
but in favor of the sureties. The discussion of this question
requires at this point a statement of some of the general princi-
ples governing the statute of limitations, as applicable to the dif-
ferent classes of cases in which it may be interposed. And, first,
we may say, that in a contest between a *cestui que trust* and his
trustee, the statute has no application until the trustee has done
some act throwing off the trust, or indicative of his purpose to
throw it off. The trustee, however, is not precluded from inter-
posing the doctrine of *laches* in a proper case. Second. Before
the adoption of the code, the statute had no application to a
sealed obligation creating a debt; such obligations, however, were
subject to the presumption of payment by lapse of time, which
became conclusive after the lapse of 20 years or more. Third.
The statute has application to unsealed contracts creating a debt.
And fourth. Also to sealed obligations or contracts amounting to
covenants, &c., &c.

Now, to which class does the bond sued on below belong? or,
rather, what was the purpose of the action below? Was it to
enforce a trust, to collect a debt, or to recover a penalty for a
breach of covenant? The action below is in the name of the
State as plaintiff, the payee of the bond of the clerk, and is
against the said clerk and his sureties for certain alleged breaches
of duty on the part of the clerk, for the performance of which the

said bond bound the said clerk while he remained in office. It is conceded that as to all of the said breaches, except the last, the clerk committed them. As to these, his honor ruled that the statute could be interposed as a defence by all of the defendants. This must have been upon the ground that the bond sued on was substantially a covenant for the performance of certain duties by the clerk, and therefore belonged to the last class of cases mentioned above, and subject to the statute. We concur in this conclusion. And this being so, an action would accrue upon any breach by the clerk during the time he remained in office, to be commenced at least within the statutory period after the expiration of the office—according to the nature of the breach—or be barred. Thirteen years, then, having elapsed after Lake went out of office before the action below was commenced for these breaches, the conclusion is inevitable, that as to these, the action, being on a covenant, was subject to the statute and was barred, and that his honor was correct in so ruling.

As stated above, however, his honor held that as to the last alleged breach, to wit, the failure of the clerk to pay over the money collected by him to the parties entitled thereto, the sureties were discharged, but that the clerk could not be, and this ruling forms the main subject of appeal upon exceptions both by the State and the clerk, Lake. We do not understand upon what distinct ground his honor held that the sureties should be discharged, whether because there was really no breach as to this matter during the term of office of the clerk, as there was no proof that he had refused a demand during said term, which was necessary for a breach ( *Wright* v. *Hamilton*, 2 Bail., 51 ; *Lever* v. *Lever*, 1 Hill Ch., *62 ; *Vaughan* v. *Evans, Ibid.,* *414); or whether, there being a breach during said term, a right of action accrued on the bond, which gave currency to the statute, and more than the statutory period having elapsed since, the statute was a good defence. But in either point of view, we concur in his honor's ruling as to this branch of the case.

The liability of the obligors on the bond must be ascertained from the terms of the bond itself, and they cannot be held responsible beyond said terms as properly construed. The bond is their

4—30

contract, and they have a right to stand on that. Now, the condition and obligation of the bond here was, "That Thomas M. Lake shall well and truly perform the duties of the said office, as now or hereafter required by law, *during the whole period he may continue in said office.*" This condition clearly made the obligors liable *only* for failure of duty during the term of office, but not for any failure after the expiration of said term.

As to the alleged failure of the clerk to pay the money collected to the parties entitled. He was not required, under the law, to pay except upon demand (see *Hamilton* v. *Wright, Lever* v. *Lever, Vaughan* v. *Evans, supra*)*;* and if there was no demand during his continuance in office, there was no breach, in this respect, of the bond, and, therefore, no right of action on the bond for said alleged breach. But if there was a demand during the term, such as required by the law to give rise to a right of action, then, as we have stated above, the statute began to run, and more than the statutory period having elapsed since, his honor was correct in holding the plea good as to the sureties. But why was it not held good also as to the principal on the bond—Lake? His honor ruled that Lake occupied a fiduciary relation to the parties entitled to the money collected by him, and that to pay it over, or to account for it on demand, was a continuing duty as trustee, commencing when he received it, and continuing until he either paid it or on demand refused to do so, or did some other act throwing off the trust before the currency of the statute could begin. No doubt, this was sound doctrine, if the action below had been against Lake himself by the parties entitled to the money, not on breaches of the bond, but for so much money had and received for their benefit collected and held by him as a public officer. In such case, the clerk could not shield himself on the ground that the breach had not occurred during his term of office, because he would be liable individually to the parties, whether he failed to pay over the money on demand as well after his office expired as before.

But the action below was not by the parties themselves, claiming the money against Lake alone as their trustee, but it was an action on the covenant or bond by the State, and such action could only be maintained for a failure of duty by the clerk during

his term of office, because there could be no breach of the bond after the termination of the office, the bond itself specifying that the obligors should be held liable only for such failure during the term ; and this, it seems to us, applied as well to the principal, Lake, as to his sureties. We mean to say, that Lake, as clerk, occupied two distinct positions in regard to his responsibility for failure to discharge his duties. First, he gave bond to the State, with the other defendants as his sureties, that he would discharge all the duties of his office during the time that he held it, which subjected him and his sureties to the penalty of said bond for any failure made during the term of the office, but not for any subsequent failure. Second, he was liable individually as a receiving public officer, independent of the bond, to the parties for whom he may have collected money, on demand made, whether during his term of office or afterwards. But as no action could accrue to the parties until demand in an action by the parties, he could not plead the statute until six years after said demand. But in an action by the State on the bond for a breach alleged to have occurred during the existence of the office, we do not see why he should not stand with his sureties, with precisely the same liabilities and the same defence, in so far as the statute is involved.

Now, the action below, as we have already stated, was upon the bond for alleged breaches, of course made, if at all, during the term of the office, and if the sureties were entitled to relief, as has been held, why not the principal on the bond ? We can see no reason for the distinction. If there was no breach for non-payment, because no demand was made while Lake held the office, then no action could arise on the bond against any of the obligors. If there was a breach, then a right of action accrued to the State against all, and the statute was given currency as to all. Without adjudicating the question, whether Lake, the clerk, could interpose the statute if the parties entitled to the money had sued him alone for money had and received, which is not the case before us, yet we think it was error in the Circuit Judge to apply in this action by the State, on the bond, a different rule to the principal on said bond from that which he applied to the sureties. If there was a cause of action at all, it was the same as to

all of the obligors; and if the statute protected one, it protected all. We think, therefore, that the judgment below against Lake should be reversed.

It may be urged that these views are in conflict with *Langston* v. *Shands* (23 Shand, 149), in which Judge Fraser, in delivering the opinion of the court, said: "The bond is conditioned that the guardian shall faithfully account for, and pay over, whatever may come into his hands as guardian. To secure the performance of this duty, the bond runs for full twenty years from the time at which the ward attains majority, or, as in this case, from the time when, by her marriage, there was a person *sui juris* and competent, as her husband, to receive and receipt for the fund." I think not. In that case, the relation of trustee and *cestui que trust*—guardian and ward—existed. It was, therefore, clearly a case in which the statute had no application, and a right of action as between them did not give currency to the statute. In addition, in that case there was no time fixed in the bond, as in the case before the court, for the failure of duty by the guardian to occur in order to attach liability to the bondsmen. A failure on the part of the guardian to account at any time after the majority of the ward, during the 20 years, as I suppose, breached the bond, and gave a right of action thereon; while here the breach giving a right of action had to occur within the four years of Lake's clerkship, from which occurrence the statute began to run in favor of the obligors.

Judgment below, as to the sureties, affirmed; but reversed as to the principal, Lake.

MR. JUSTICE McIVER [concurring in the result]. This being an action on the *official* bond of the clerk, brought by the State, the obligee in the bond, it seems to follow, necessarily, that, in order to sustain the action, some breach of the covenants which the bond was designed to secure the performance of must be established. The only breach relied upon (the other alleged breaches being confessedly barred by the statute of limitations), is the failure to pay over to the parties entitled, as ordered by the court, the money received by the clerk for them; and if, as Chancellor Harper holds in *Vaughan* v. *Evans* (1 Hill Ch., 430), the orders

directing the clerk to pay out the money to the parties interested, "did not impose upon him the duty of seeking out the parties, wherever they might be found, and making a tender"; and if, "according to the case of *Wright* v. *Hamilton* (2 Bail., 51), there was no default * * * till the money *was demanded*, and he refused to pay it"; and if, as is conceded, there was no demand during the continuance of Lake's term of office as clerk, it seems to me that the conclusion is inevitable, that there was no breach of the condition of the bond; for, by the express terms of the bond, the obligors were only bound for the performance of the duties of the office by Lake during the time while he held the office of clerk, and hence the action *on the bond* cannot be maintained against any of the obligors.

Whether the parties entitled to the money which was in Lake's hands when he went out of office, may not maintain an action against him, in the nature of an action for money had and received to their use, is another question, and does not arise in the present case. But I do not see how an action on his official bond, in which the State claims judgment for the penalty, can be maintained either against him or his sureties unless some breach of the condition of the bond has been established; for the contract sued upon—the bond—only subjects the obligors to the penalty demanded in the event of a breach of the conditions of the bond.

I agree, therefore, with the Chief Justice, that the judgment against Lake should be reversed, and the judgment in favor of the sureties should be affirmed.

MR. JUSTICE McGOWAN, *dissenting* [omitting his statement, which is given above]. As to the exceptions of Lake, the principal. We do not think it was error to receive in evidence the records in the cases of Hill *v.* Watson, Thompson *v.* Thompson, and Smith *v.* Lake. One of the allegations was that Lake, during his term of office as clerk, officially received certain funds in the two cases first named, and the records, including his own statement of the accounts therein, were the very best evidence of the alleged fact. Another allegation was, that these funds were never turned over to Smith, his successor in office, and the record in the case of Smith *v.* Lake was offered as evidence upon that point.

In the case of *Featherston* v. *Norris* (7 S. C., 485), it was said that "a bank book containing proper credits was the proper evidence of such a deposit, to be delivered by the outgoing commissioner in equity to his successor." If such a bank book was evidence of what it contained, surely a record of the court, to which Lake himself was a party, was admissible, as tending to show that the funds in his hands as clerk were never turned over to his successor. The records proved the fact of their existence. "It is, therefore, the only proper legal evidence of itself, and is conclusive evidence of the fact, and of all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence." *Greenleaf on Evidence*, sections 527 and 538.

II. Then as to the alleged errors of the judge, in charging and refusing to charge certain requests as bearing on the question of the statute of limitations. Both sides complain, and it will prevent confusion and repetition to refer to the charge itself, which is printed in the Brief. As to the liability of Lake, the judge charged substantially as follows: "If Lake received the money as clerk, he became as to these funds an express trustee, and although he might have relieved himself by turning them over to his successor, if he did not do so, the trust continued until such time as it was terminated by his repudiating the trusteeship and holding in defiance of the parties, setting them at arm's length. * * * If there was no order to pay out these funds, but he still continued to hold them, the trust would continue to attach, and the liability of Lake himself would continue indefinitely until there was demand made, on the part of the persons entitled to the funds; and the statute would not run in favor of Lake. In order to give currency to the statute, there must be a cause of action. If there was no order to pay out, the statute would not protect him, because in that case there would be no cause of action. But if there was an order to pay out, the question was made whether the statute would run from the time of the order or the time of demand. I think that an order to pay out funds in the hands of the clerk, would authorize him to pay, and make it his duty to pay on demand, and that no right of action against Lake would commence until there had been a demand and refusal.

Whenever, after demand, he refused to pay, then that refusal would be a breach of the bond and there would be a right of action—from that moment they dealt at arm's length, and in six years Lake would be protected by the statute," &c.

Was there error in this, of which Lake can complain? The obligation sued on was under seal, a penal bond executed in 1868, before the code, and if it had been for the payment of money only, would not have been subject to the statute of limitations, but have remained in full force until presumed paid in 20 years. But while the penalty was in money, the bond was really given to secure the performance of covenants—that the said Lake "shall well and truly perform the duties of the said office (clerk) as now or hereafter required by law, during the whole period he may continue in said office." It is manifest that there was no liability on the part of the obligors, until Lake failed to perform the duties of the office. Then, however, there was a breach of the condition, and the obligors liable therefor. As to that liability (although arising out of a bond), it seems that the statute of limitations may be pleaded. It is true, as a general rule, that the statute commences to run at the moment the right of action accrues; but, as it seems to us, this is not always the case in reference to those actions which arise out of breaches of official bonds, for the reason that those breaches may be very different in character, some being complete and perfect by a single act, and others continuous in their nature; and as to this latter class, the question as to the currency of the statute, must always be— *not* when the right of action first accrued, not when the party entitled might have sued—but when he was bound to sue, on pain of being barred by the statute.

Now, in reference to the alleged breach of not paying out to the parties money received by Lake as clerk, and still in his hands under orders to pay, we cannot doubt that such breach was continuous until the money was either paid or presumed to be paid, or Lake upon demand had disclaimed his obligation to pay. "If a clerk neglects or refuses to perform his duty, he commits a breach of his official bond, and becomes liable to an action for the penalty. The default consists, not in receiving money, but in neglecting or refusing to deposit it in bank; or where it is to be

immediately paid out, in not paying out according to the order of the court. This is a continuing duty, and the default continues so long as the performance of such duty is neglected." *State* v. *Moses*, 18 S. C., 372.

Without questioning the case of *Pickens* v. *Dwight* (4 S. C., 360), or undertaking to decide definitely that Lake, the clerk, was a technical trustee as to the duties imposed on him, there can be no doubt whatever that "he was a public officer, to whom was entrusted by law the collection and custody of the money of others and the care and custody of their bonds and other property," and as to such money and property so entrusted to him, we do not see why the clerk of the court should not fall under the same rule which is applied to all other persons who receive the money of others in a fiduciary capacity, and are under bond to secure the performance of certain prescribed duties in reference thereto; that is to say, that being a *quasi trustee*, he may not plead the statute of limitations as to funds officially in his hands, until he has done some act which purports to be a full execution of the trust, and the parties in interest are put to the assertion of their rights. See *Motes* v. *Madden*, 14 S. C., 488; *Houseal* v. *Gibbes*, Bail. Eq., 484; *Van Wyck* v. *Norris*, 15 S. C., 256; *Roberts* v. *Johns*, 16 *Id.*, 183, and 24 *Id.*, 588; *Langston* v. *Shands*, 23 *Id.*, 153; *Owens* v. *Watts*, 24 *Id.*, 79.

Accepting this view, however, it is urged that the law required Lake to turn over to his successor all funds in his hands officially; and that alone put an end to the trust and gave currency to the statute; and for this, the case of *Van Wyck* v. *Norris, supra,* is cited. It is true, it was held in that case that "when a commissioner turned over his office, bank book, &c., to his successor, claiming to withhold nothing, the statute of limitations then commenced to run in his favor against persons having funds in his hands," &c. That ruling most certainly was correct, but we do not think it should control this case. There all the office property of Norris (the out-going officer), including funds in his hands officially, was actually or intended to be turned over to his successor. That was throwing off the trust and started the statute; while here the very contrary is true. There was no effort to throw off the trust, but Lake, the outgoing officer, successfully

resisting the claim of his successor, retained and still retains possession of the funds. The difference between the two cases is simply that between doing and not doing—between commission and omission. We agree with the Circuit Judge, that the mere existence of that law, which was ignored and disregarded, could not, contrary to the fact, be considered as a complete execution of the trust by Lake, and that he could not take advantage of his own wrong in refusing obedience to that law.

But it is also urged that the claim of Smith, the successor, although unsuccessful, must be regarded as a demand by the parties entitled to the funds, and that such demand for payment gave currency to the statute against them. We cannot accept this view. As we understand it, Smith, the incoming officer, was in no way the agent or attorney in fact of the parties, and we fail to see how or why they should be bound by his unsuccessful effort to get control of the funds. Smith's effort to obtain control of the funds should not afford Lake protection against the real owners.

But it was still further urged that the orders of court to pay out the funds operated as a demand for payment, which gave currency to the statute in favor of the clerk, and the case of *Vaughan* v. *Evans* (1 Hill Ch., 430) was cited as favoring the view. But we think it will be found upon a careful examination that nothing was there ruled which, going beyond the particular circumstances of that case, declared a general rule upon the subject. The question was as to which of two bonds of the same officer, a default as to money received during the first term should be referred. Chancellor Johnstone, on the Circuit, held that "there was no evidence that the money was ever demanded from Evans by the insurance company. The principles of *Wright* v. *Hamilton* are as applicable to a commissioner as to a sheriff; that case is therefore an authority that a right of action could not arise against Evans until demand of payment." Chancellor Harper, in delivering the opinion of the Appeal Court, said: "And what is the evidence here of default during the first term? The strongest cases are those in which the commissioner was ordered to pay over the funds. These orders were an authority to pay over the money, and made it his duty to do so, if it were

demanded. Certainly, however, it did not impose on him the duty of seeking out the parties, wherever they might be found, and making a tender. According to the case of *Wright* v. *Hamilton* (2 Bail., 51), there was no default and no cause of action against Evans till the money was demanded and he refused to pay it, and no demand was shown during the first term," &c. Appended to this opinion there is the following remark of Johnson and O'Neall, as members of the Appeal Court: "We are of opinion that the neglect of the commissioner to pay over or invest money as ordered by the court, was a breach of the condition of the bond, and that the application for such an order ought to be regarded as *prima facie* evidence of a demand, and that the sureties to the bond of the term in which such order was made are liable."

We think it manifest from these different opinions that the principal difficulty in *Vaughan* v. *Evans* was in reference to the particular facts of the case. In equity cases especially, orders to pay out funds in court are generally taken, as a matter of course, by the solicitors engaged; and when the parties are numerous, such orders may be entirely unknown to them. We take the view of Chancellor Harper, that it was not the duty of the clerk to hunt up parties to whom money was due. "Demand" is defined to be "a request addressed to a person to do some act which he is legally bound to do, after the request has been made." 1 *R. & L. Law Dict.*, 369. I cannot hold that the judge erred in refusing to charge that the orders of court to pay out the funds, amounted to demands of payment by the parties in interest, so as to give currency to the statute against them and in favor of the clerk.

It is said, however, that the demand and refusal was after the clerk's term of office had expired, and therefore was no breach of the bond, and for that reason there can be no recovery in this action upon the bond; but the parties in interest must be left to their separate actions for money had and received against Lake as an individual. It is true that the State is the obligee of the bond, but, as it seems to me, it was required to be executed in that form, for the benefit of all persons who should suffer from the official default of the clerk; and that the bond, though in the

name of the State, should be liberally construed so as to cover
and protect all persons who have so suffered.

I cannot agree that the Circuit Judge erred in his charge as
to the defence of the principal obligor, Thomas M. Lake.

*Plaintiff's exceptions as to sureties.* Mr. Murfree, in his recent
work on official bonds, says : "The contracts into which sureties
enter are not founded on any valuable consideration passing to
them from the obligee. Hence they are regarded by the law
with favor and indulgence, which has been formulated into a
maxim that the liability of sureties is *strictissimi juris.* They
are held to be bound as far as they distinctly bind themselves, but
their responsibility cannot be extended by construction beyond
the terms of their agreement." *Murfree*, section 620; *Tinsley*
v. *Kirby*, 17 S. C., 1. One of the characteristics of "official
bonds" is, that they are generally limited to a particular period
of time. The term of the office of clerk in this State is four
years, and the agreement of his sureties on the official bond is,
"that he shall perform the duties of the office, during the whole
period he may continue in said office." It is manifest that the
sureties of Lake made themselves responsible for his good con-
duct during his term of office; that is to say, from November,
1868, to November, 1872, and for nothing that he might do or
omit to do after that time. "The responsibility of sureties is
limited to such money as the officer may have received, either by
himself or his accredited agent, during the currency of the bond
and the term of office which it represented, and which he failed
to account for." *Murfree*, section 302.

This seems to be plain, and as a necessary consequence, that
at the expiration of the office, there would be a right of action
for all breaches of the bond which had been committed during the
term. And if this be so, it must follow that from that time (ex-
piration of the office) the statute would begin to run in favor of
the sureties—certainly as to all breaches which could only be
committed during the term, or immediately upon its close; as, for
example, in respect to a default in making regular return to the
court, or in failing to turn over official funds to the successor
upon the close of the term. As to these breaches, we think there
can be no doubt that, in favor of the sureties, the statute com-

menced to run upon the expiration of the office, or within a reasonable time thereafter. *Murfree*, section 621, and the authorities cited in sections following. "In some of the States there are special statutes limiting actions against sureties on official bonds of certain officers. These statutes [we have none] are, of course, to be construed according to their respective terms, but in all of them a vital question is, when does the statute begin to run? The answer to this question is, upon general principles, that the statute begins to run as soon as the liability of the surety is fixed." *Murfree*, section 784.

Suppose, however, the officer during his term of office regularly receives funds, which, not being accounted for, remain in his possession after he goes out of office. In any but an extraordinary case, these funds would be turned over to his successor, which would undoubtedly enable the sureties to plead the statute to all liabilities whatever, growing out of the suretyship. *Van Wyck* v. *Norris, supra.* But suppose further, that in some way this transfer was not made, and the funds still remain in the hands of the outgoing officer, what then? We have just held that, as to the officer himself still holding the funds, the breach, though first made during the term, was continuous in its nature, and extended beyond the term of office, and until payment or demand made; and the question now is, whether the liability of the sureties was also continuous, and followed the money beyond the term of office. The Circuit Judge held that "when Lake went out of office, the sureties had a right to regard him as having ceased to be trustee, so that no longer could they be bound by any act on the part of Lake; that at that time a right of action accrued against them, and, as a consequence, they would be protected after the lapse of six years"—holding that "the parties in interest, whose funds were in court, could not convert Lake into a continuing trustee, beyond the expiration of his term of office, by neglecting to demand their money of him; still he would be chargeable himself as trustee until he has repudiated the position of trustee," &c. I cannot say that this was error.

I think, therefore, that the judgment of the Circuit Court should be affirmed.

Judgment reversed as to Lake,<br>
and affirmed as to the sureties.